**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Benjamin Jankowski, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>The Home Depot,<br><br>Defendant. | Case No. 1:25-cv-09144<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Benjamin Jankowski, individually and on behalf of himself and all others similar situated, hereby files this class action complaint against Defendant The Home Depot, Inc. ("Home Depot"), and in support thereof alleges the following.

## INTRODUCTION

1. The Illinois Legislature enacted the Biometric Information Privacy Act ("BIPA"), 740 ILC 14/5 *et seq.*, after observing the growing use of biometrics—such as scans of facial geometry. 740 ILCS 14/5(a); 740 ILCS 14/10. The Legislature recognized the unique risks posed to Illinoisans by this practice, explaining that biometrics are "biologically unique to the individual; therefore, once compromised, the individual has no recourse," and that the "full ramifications of biometric technology are not fully known." 740 ILCS 14/5(c), (f). To that end, and in order to protect public welfare, security, and safety, the Legislature passed BIPA. 740 ILCS 14/5(g).

2. BIPA regulates the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.*, 14/5(g). It does so by, among other things, requiring private entities "in possession of biometric identifiers or biometric information" to develop publicly available, written policies establishing retention schedules and guidelines for permanently destroying biometric identifiers and information. 740 ILCS 14/15(a). BIPA also

prohibits a private entity from "collect[ing], captur[ing], purchas[ing], receiv[ing] through trade, or otherwise obtain[ing] a person's or a customer's biometric identifier or biometric information," without first obtaining the subject's informed, written consent. *Id.*, 14/15(b).

3. Home Depot is acutely aware of BIPA's requirements as applied to facial recognition technology. Indeed, Home Depot operates 76 stores in Illinois. [1]

4. In August 2023, Home Depot announced on an investor call that it had begun to use "computer vision" in its stores.[2] "Computer vision" is a type of artificial intelligence that "uses machine learning and neural networks to teach computers and systems to derive meaningful information from digital images, videos and other visual inputs—and to make recommendations or take actions when they see defects or issues."[3]

5. At the time, Home Depot executives focused on computer vision's ability to manage inventory by using cameras and machine learning to aid in inventory management. But by May 2024, Home Depot had expanded its use of computer vision and was "leveraging Computer Vision for other applications across the store," including at its "self-checkout corral[s] to help" mitigate theft.[4]

6. In the fall of 2024, Home Depot's Vice President of Asset Protection Scott Glenn explained the key factors Home Depot considered when implementing computer vision technology:

> As a retailer, stopping the loss—and making bad actors think twice about coming into our environment—are paramount. More importantly, helping our associates and customers feel safer and

---

[1] https://www.homedepot.com/l/IL
[2] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/documents/hd-2q23-transcript.pdf
[3] https://www.ibm.com/think/topics/computer-vision#:~:text=Computer%20vision%20is%20a%20field,they%20see%20defects%20or%20issues.
[4] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/documents/hd-1q24-transcript.pdf

> actually be safer is the third leg of that stool. Safety has increasingly become our responsibility. Technology solutions will be at the forefront of that activity.[5]

7. Glenn also answered the question of what he would say to "an everyday honest customer [who] expressed concern about balancing individual privacy with the use of facial recognition technology":

> We go above and beyond the legal requirements for notification, and we use the tools only to protect our associates, customers, and the shopping experience. Over the years, most customers have adapted to the thought of being observed. The ubiquitous nature of CCTV has become normal. I think most of our customers understand what we are doing and trust us to protect them and their privacy.[6]

Explaining his thoughts on whether retailers would expand the use of facial recognition technologies in the coming years, Glenn remarked: "I'd like to think retailers will continue to deploy these tools, use them responsibly, and show how valuable they can be, and that there are no inherent civil liberty dangers."[7]

8. Despite Mr. Glenn's assurances to the contrary, Home Depot has failed to satisfy its legal obligations and to respect its customers' rights to privacy.

9. Home Depot uses computer vision in its stores to perform facial recognition, thereby collecting its customers' facial geometry. Because Home Depot utilizes facial recognition technology, BIPA requires that it: (1) make publicly available written policies containing retention schedules or guidelines for permanently destroying these facial-geometry scans and (2) obtain its customers' informed, written consent before collecting and disclosing the facial scans. Home Depot does neither.

---

[5] https://losspreventionmedia.com/top-retailers-rely-on-artificial-intelligence-for-loss-prevention/
[6] https://losspreventionmedia.com/top-retailers-rely-on-artificial-intelligence-for-loss-prevention/
[7] https://losspreventionmedia.com/top-retailers-rely-on-artificial-intelligence-for-loss-prevention/

10. Plaintiff brings this action on behalf of himself and all other individuals who had their biometric identifiers and/or biometric information collected, captured, otherwise obtained, used, and/or stored, when visiting a Home Depot location in Illinois at any time within the applicable statute of limitations, to prevent Defendant from further violating Illinois law, and to recover damages for Defendant's violations of his and other Class Members' statutorily protected rights to privacy under BIPA.

## PARTIES

11. Plaintiff Benjamin Jankowski is a resident of Chicago, Illinois, who regularly shops at the Home Depot located at 200 W. 87th St. Chicago, Illinois.

12. The Home Depot is incorporated under the laws of the State of Delaware. Home Depot maintains its corporate headquarters and principal place of business at 2455 Paces Ferry Road SE, Atlanta, GA 30339. Home Depot is the "largest home improvement retailer," with 2,300 stores across North America[8] and approximately 76 locations across the State of Illinois.[9]

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject-matter of this action pursuant to 28 U.S.C. § 1332(d) because this is a proposed class action with more than 100 putative Class Members, at least one Plaintiff or Class Member is a citizen of a state different from Defendant, and because Plaintiffs and the Class seek more than $5,000,000 in damages.

14. This Court has personal jurisdiction over Home Depot because a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in the state of Illinois. The privacy violations complained of herein resulted from Defendant's purposeful and tortious acts directed

[8] https://corporate.homedepot.com/page/about-us
[9] https://www.homedepot.com/l/IL

towards citizens in Illinois. Home Depot purposefully avails itself of Illinois on a daily basis by operating dozens of retail stores there, and the claims alleged herein arise directly out of Home Depot's intentional conduct against Plaintiff and Class Members while they were shopping at Home Depot locations within Illinois.

15. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

### I. Facial Recognition Technology

16. "Facial recognition" is a technology that automatically ascertains and verifies the identity of an individual from an image or video frame.[10] The process is as follows. First, facial recognition software is used to detect a face. Next, the facial recognition software analyzes the face, measuring the face's geometry and converting those measurements into "string of numbers or points, often called faceprint."[11] Then, facial recognition software uses the face print to identify an individual.[12] It does so by comparing the detected face against a database of photos of known individuals.[13]

17. The ability to identify individuals, nearly instantaneously, has proven immensely valuable to retailers. In the fall of 2024, "300 US and UK senior retail leaders told researchers the

[10] https://www.dhs.gov/publication/facial-recognition-technology; https://azure.microsoft.com/en-us/resources/cloud-computing-dictionary/what-is-face-recognition
[11] https://www.nytimes.com/wirecutter/blog/how-facial-recognition-works/
[12] https://www.nytimes.com/wirecutter/blog/how-facial-recognition-works/
[13] https://azure.microsoft.com/en-us/resources/cloud-computing-dictionary/what-is-face-recognition

current theft crisis is their number one business concern."[14] To solve this problem, retailers—including "three top ten US retailers, more than fifty grocery banners, as well as home improvement, luxury apparel, and big box chain stores"— have turned to facial recognition.[15]

18. In the retail security context, facial recognition is used in conjunction with store cameras in two primary ways.

19. The first method is "watchlist alerting."[16] When employing this method, the facial recognition platform notifies the retailer's security team when an individual is on a designated watchlist. The "watchlist" is a database of individuals known to either the store or law enforcement based on previous interactions.

20. The second method allows retailers to spot potential theft, even when the individual whose face has been scanned is not in the database. An executive from Corsight, a vendor of facial recognition software, explained, "Using Facial Intelligence, retailers identify specific predefined scenarios typical of shoplifters, even if the individual involved is not known beforehand. These scenarios include returning to the same store with high frequency in a short time, two suspects cooperating, the interaction of one of the suspects with the staff, and other appearance patterns that indicate a high probability of a crime about to occur."[17]

21. Security is not the only use retailers have found for facial recognition software. A July 2020 report from the Government Accountability Office noted, "The use of facial recognition technology for marketing and customer services has also expanded in recent years. Retailers and

---

[14] https://losspreventionmedia.com/top-retailers-rely-on-artificial-intelligence-for-loss-prevention/
[15] https://losspreventionmedia.com/top-retailers-rely-on-artificial-intelligence-for-loss-prevention/
[16] https://securityjournalamericas.com/retailers-adopts-facial-recognition/
[17] https://securityjournalamericas.com/retailers-adopts-facial-recognition/

others can use it to identify VIP customers to send them targeted marketing or provide them with a more personalized experience."[18]

## II. Home Depot Collects, Captures, Uses, and/or Stores Scans of Illinoisans' Facial Geometry

22. Home Depot is among the retailers that use facial recognition technology in their stores.

23. Home Depot's Privacy and Security Statement describes its use of facial recognition technology. It explains that Home Depot collects Biometric Information through the use of "facial recognition" technology by using "cameras at select stores, in parking lots, and at other facilities as permitted under applicable laws."[19] Home Depot explains that it discloses this biometric information to:

> - Service providers that process information on [its] behalf, such as security and fraud prevention services.
> - Law enforcement, public and government authorities, and other entities as [it] deem[s] reasonably necessary to comply with law, support investigations, and protect the rights and property of you, us, and others.
> - Any successor to all or part of [its] business.
> - Advisors and consultants.
> - [Its] affiliates and subsidiaries.

24. Home Depot's written policy is insufficient under BIPA because it does not "establish[] a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private

---

[18] https://www.gao.gov/assets/gao-20-522.pdf
[19] https://www.homedepot.com/privacy/privacy-and-security-statement

entity, whichever occurs first." 740 ILCS 14/15(a). Instead, Home Depot generally states that it will retain the personal information it collects "for as long as reasonably necessary to fulfill the purposes described above or when the information was collected, unless a shorter retention period is required by law."[20] The policy does not inform individuals that, in Illinois, the information may be retained for a maximum period of three years from the individual's last interaction.

**III. Plaintiff Bejamin Jankowski's Experiences**

25. Plaintiff Bejamin Jankowski regularly shops at Home Depot. Mr. Jankowski visited the Home Depot at 200 W. 87th St., Chicago, Illinois, on or about June 22, 2025. Over the past five years, Plaintiff Jankowski has shopped at this store a number of times.

26. Mr. Jankowski entered the Home Depot and shopped for his items. Because this Home Depot lacked manned registers, Mr. Jankowski went to complete his purchase at a self-checkout kiosk.

//

//

//

//

//

//

//

//

[20] https://www.homedepot.com/privacy/privacy-and-security-statement

27. When Plaintiff Jankowski approached the self-checkout kiosk, Plaintiff Jankowski noticed that it was equipped with a screen and a camera. On the screen, Plaintiff Jankowski saw himself. Around his face, in the image around the screen, was a small green box as pictured below:




28. Home Depot's Illinois locations are outfitted with cameras and facial recognition-enabled systems at a minimum at Home Depot's self-check-out kiosks. This includes the location Mr. Jankowski shopped at.

29. Mr. Jankowski's biometric identifiers and/or biometric information—to wit scans of his facial geometry—were collected, captured, used, and/or stored by Home Depot during his visit.

30. At no point before or during Mr. Jankowski's visit to Home Depot was he ever informed, in writing or otherwise, that his biometric identifiers or biometric information were being collected, captured, used, and/or stored by Home Depot.

31. Mr. Jankowski never provided Home Depot a written release authorizing the collection, use, and/or storage of his biometric identifiers or biometric information.

## CLASS ACTION ALLEGATIONS

32. **Class Definition:** Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated, as representatives of the following Class:

> **Home Depot Class:** All individuals who had their facial geometry collected, captured, received, or otherwise obtained while visiting a Home Depot store in Illinois.

Excluded from the Class is Defendant; officers, directors, and employees of Defendant; any entity in which Defendant has a controlling interest in, is a parent or subsidiary of, or which is otherwise controlled by Defendant; and Defendant's affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assignees. Also excluded are the Judges and Court personnel in this case and any members of their immediate families. Plaintiff reserves the right to modify and/or amend the Class definitions, as necessary.

33. **Numerosity:** The members of the class are so numerous that joinder of all members of the Classes is impracticable. Plaintiff is informed and believes that the proposed Class includes tens of thousands of people based on the fact that Home Depot has 76 locations in Illinois. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records.

34. **Commonality and Predominance:** This action involves common questions of law and fact to the Plaintiff and the Class Members, which predominate over any questions only affecting individual Class Members. These common legal and factual questions include, without limitation:

a. Whether Home Depot collected or captured the Class Members' biometric identifiers;

b. Whether Home Depot maintained a publicly available retention schedule for biometric identifiers or information;

c. Whether Home Depot maintained publicly available guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information had been satisfied or within 3 years of the individual's last interaction with Home Depot, whichever occurred first;

d. Whether Home Depot obtained Class Members' informed, written consent prior to collecting Class Members' biometric identifiers

e. Whether Home Depot distributed Class Members' biometric identifiers.

35. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff, like every other Class Members, had his facial geometry unlawfully collected, captured, and disclosed by Home Depot.

36. **Fair and Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and has retained counsel experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class Members.

37. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages available to individual Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in managing this action as a class

action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. Absent a class action, individual consumers like Plaintiff would find the cost of litigating their claims prohibitively high and would have no effective remedy for monetary relief.

## LEGAL CLAIMS

### COUNT I
### Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15

38. Plaintiff restates and realleges each allegation above as if contained fully herein.

39. BIPA provides that, "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

40. Home Depot is a private entity within the meaning of BIPA.

41. Home Depot, through its use of biometric facial recognition technology in Illinois throughout its stores and at self-checkouts, captured and possessed Plaintiffs' and other Class Members' biometric identifiers, to wit their facial geometry. Home Depot therefore collected and captured Plaintiffs' and the Class Members' biometric identifiers.

42. Home Depot has not made publicly available, as required by BIPA, a written policy relating to the retention and permanent destruction of the facial geometry scans it possesses.

43. Home Depot did not, before capturing and collecting Plaintiffs' and Class Members' facial geometry, inform Plaintiff or the Class Members or their legally authorized

representatives of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used.

44. Home Depot did not, before capturing and collecting Plaintiff's and Class Members' facial geometry, receive Plaintiffs' or Class Members' written consent to the collection of their biometric identifiers.

45. Home Depot, by its own admission, also discloses its customers' biometric identifiers, specifically their facial geometry.

46. Plaintiff and the Class Members did not consent to Home Depot's disclosure of Plaintiff's and Class Members' biometric identifiers.

47. Home Depot's disclosure and dissemination of Plaintiffs' and the Class Members' biometric identifiers and information was not required by State or federal law or municipal ordinance.

48. Home Depot's violation of BIPA was intentional or in reckless disregard of the statutory requirements.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and the Class, respectfully requests that the Court enter an order:

a. Certifying the above-defined Class, appointing Plaintiff as Class Representative, and appointing the undersigned as Class Counsel;

b. Declaring that Defendants' actions, as set forth herein, violate BIPA;

c. Awarding injunctive and equitable and injunctive relief necessary to protect the interests of Plaintiff and the Class;

d. Awarding statutory damages of $5,000 for each intentional and/or reckless violation of BIPA, or alternatively, awarding statutory damages of $1,000 for each negligent violation of BIPA;

e. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorney's fees and costs;

f. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

g. Awarding such other and further relief as the Court deems just and equitable.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury of all claims that can be so tried.

Dated: August 1, 2025

Respectfully submitted,

By: */s/ David M. Cialkowski*

David M. Cialkowski (IL 6255747)
Brian C. Gudmundson (*pro hac vice* forthcoming)
Michael J. Laird (*pro hac vice* forthcoming)
Madison M. DeMaris (*pro hac vice* forthcoming)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844

Jamisen A. Etzel (*pro hac vice* forthcoming)
**LYNCH CARPENTER, LLP**
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 321-0246
jamisen@lcllp.com

Christopher Cornelius (IL 6343186)
**LYNCH CARPENTER, LLP**
111 W. Washington Street, Suite 1240

Chicago, Illinois 60602
Main: (312) 750-1265
Direct: (312) 483-1032
chris@lcllp.com

*Attorneys for Plaintiff and the Proposed Class*